UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X   Docket No.:  2:23-cv-7558
DANIEL M. IRIZARRY,

             Plaintiff,                                          **COMPLAINT**

      -against-                                                  **JURY TRIAL DEMANDED**

THOMAS MacCARTHY, individually and in his capacity
as Assistant Professor at Stony Brook University and
SUNY AT STONY BROOK d/b/a/ as STONY BROOK
UNIVERSITY

             Defendant.
------------------------------------------------------------------X

       Plaintiff Daniel M. Irizarry ("Plaintiff" or "Irizarry") by and through her attorneys, Stagg

Wabnik Law Group LLP, as and for his Complaint against defendant Thomas McCarthy

("MacCarthy") and SUNY at Stony Brook d/b/a/ as Stony Brook University ("Stony Brook")

(hereinafter collectively referred to as "Defendants") state and allege as follows:

## NATURE OF THE ACTION

       1.     Plaintiff had exemplary academic and employment records for over five years

before McCarthy discharged Plaintiff and removed him from his Ph.D. program because of

Plaintiff's familial status and his gender for not conforming to traditional gender stereotypes, and

in retaliation for Plaintiff complaining and opposing McCarthy's discriminatory conduct.

McCarthy's conduct violated Title IX of the Education Amendments of 1972,  and the New York

State Human Rights Law ("NYSHRL" or "Executive Law"), NY Exec.  L. §§ 290 *et seq*.

MacCarthy's conduct was willful and wanton and showed a reckless disregard for Plaintiff's

rights and the laws prohibiting discrimination and retaliation, and his actions continue to cause

Plaintiff to suffer substantial economic and compensatory damages, including severe mental

anguish and emotional distress.  Plaintiff did not only lose a job because of MacCarthy; he lost

his chance to obtain a Ph.D. and a lucrative six-figure career in the biotech industry, as these jobs were now out of reach without a Ph.D.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over Plaintiffs' claims pursuant to 28 USC § 1331 because the matters in controversy arise under the laws of the United States. Specifically, Plaintiffs assert claims under Title IX of the Education Amendments of 1972, 20 USC § 1681, et seq.

3.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 USC § 1367.

4.     Venue is proper in this Court pursuant to 28 USC § 1391(b) because all parties reside within this Court's judicial District and a substantial part of the events or omissions giving rise to the claims occurred within this District.

## PARTIES

5.     Plaintiff is an individual residing in Suffolk County in the State of New York.

6.     At all relevant times herein, MacCarthy was an Assistant Professor at Stony Brook University ("Stony Brook") and Plaintiff's supervisor.  MacCarthy had the power to, *inter alia*, hire and fire employees, set their work schedules, determine job duties and responsibilities, maintain employment records, conduct evaluations, and had the authority to alter the terms and conditions of employees' employment, including Plaintiff.

7.     Stony Brook is an exempt Not-For-Profit  Domestic corporation, is an educational institution as defined by 20 U.S.C. § 1681(c), and receives federal funding.

8.     Stony Brook was and is an employer within the meaning of the NYSHRL.

9.     MacCarthy, as Plaintiff's supervisor and as the chief person who discriminated and retaliated against Plaintiff, was Plaintiff's employer within the meaning of the NYSHRL, and Stony Brook was also Plaintiff's employer within the meaning of the NYSHRL.

## STATEMENT OF THE FACTS

10.     On or about June 1, 2013, Plaintiff began working at Stony Brook in the lab of Dr. Jennie Williams as a research assistant, where he researched cancer prevention and treatment therapies.

11.     On or about September 1, 2015, Plaintiff enrolled at Stony Brook to complete his undergraduate research in Biology.

12.     On or about October 1, 2015, Plaintiff registered his disability with the Stony Brook student office—he had Attention Deficit Hyperactivity Disorder ("ADHD").

13.     As a result of his disability, Plaintiff received accommodations from Stony Brook.

14.     On or about August 20, 2016, Plaintiff graduated from Stony Brook with a Bachelor of Science in Biology.

15.     On or about September 1, 2016, Plaintiff enrolled in the Ph.D. Graduate Program in Genetics at Stony Brook.  The Genetics program at Stony Brook is a program that requires students to function as students, teachers, researchers, and employees.

16.     The Genetics program consisted of 2 years of coursework/research, followed by full-time research for as many years as needed to complete a thesis.

17.     At the end of year 1, one must complete a qualifying exam to continue in the program.  Students must assemble a project idea independent of their research work, compose a written Grant, and present it to a committee of experts.

18.     Acceptance into the program meant that the individual, for the work performed, would receive a stipend of $27K per year, health insurance benefits,  and tuition.

19.    As part of Stony Brook's Ph.D. graduate program in genetics, enrollees had to work in a laboratory to pursue their dissertation research.

20.    On or about July 1, 2018, Plaintiff began working in MacCarthy's laboratory.

21.    Throughout Plaintiff's tenure in McCarthy's laboratory, MacCarthy made offensive comments about Plaintiff's disability-ADHD.

22.    MacCarthy routinely insulted Plaintiff during lab meetings by mocking how he read.

23.    In a private one-on-one meeting with McCarthy, Plaintiff explained that, at times, his ADHD would sometimes give him trouble.

24.    One of the significant symptoms of attention deficit hyperactivity disorder (ADHD) is related to problems with object permanence.  This refers to understanding that objects exist when they are out of sight.

25.    For the Plaintiff, this manifested when he could not recall the purpose of specific figures or experiments in academic papers as quickly as MacCarthy would have liked.

26.    In response, MacCarthy asked Plaintiff, "Why don't you take more Adderall?"

27.    Despite his disability, Plaintiff performed well in his studies and research.

28.    MacCarthy was not only nasty with respect to his words—he deliberately exploited Plaintiff.  MacCarthy knew that Plaintiff was a skilled carpenter and directed Plaintiff to perform carpentry work on his house without compensation.  MacCarthy took advantage of his position as Plaintiff's supervisor to receive free labor for his personal needs.  This type of behavior exhibited by MacCarthy demonstrated his objectionable character.

29.    On or about December 30, 2018, Plaintiff applied for a Grant from the National Institute of Health (hereinafter "NIH"), specifically within the National Institute of Allergy and Infectious Diseases ("NIAID"), an institute within the NIH.

30.     At the beginning of 2020, NIAID selected Plaintiff for its Grant, which meant he received funding for his research.  Receiving a grant from NIAID was a substantial and distinguished achievement.

31.     On or about April 1, 2020, after being approved for the NIAID grant, Stony Brook received the grant funds to cover Plaintiff's wages, benefits, and tuition.

32.     In 2020, Plaintiff was married and had two young children—one of his children had a serious medical condition.  On or about June 23, 2020, Plaintiff sent an email to McCarthy explaining that he could not meet over Zoom as scheduled because one of his children was ill. His wife cared for the ill child while Plaintiff cared for his other young child.

33.     MacCarthy moved the meeting to the next week—he stated that he was busy himself and asked Plaintiff to write a report in lieu of the meeting.

34.     Two days later, on June 25, 2020, McCarthy emailed Plaintiff, stating that Plaintiff did not reply to his June 23, 2020 email.

35.     Plaintiff promptly responded to the June 25, 2020 email, and explained that he was dealing with a family issue due to an illness from which his child was suffering and asked several questions to clarify what MacCarthy wanted him to do in the report.

36.     In reply, MacCarthy sent an email saying, "To be honest, since your wife is able to take care of your children, I don't think that is much of an excuse for not working more or less normally.  I also raised two children, so I think I should know."

37.     Plaintiff took exception to McCarthy's email, viewing it as sexist and inappropriately interfering in his family life.  Plaintiff wrote back to MacCarthy objecting to McCarthy's sexism, i.e., expecting only his wife (and women in general) to care for his children and his interference in how he should parent and care for his children.  MacCarthy did not respond to Plaintiff's objection.

38. Only six days after Plaintiff objected to MacCarthy's email, on July 1, 2020, McCarthy told Plaintiff that Plaintiff's employment as a Research Project Assistant in Applied Math and Sciences would be terminated as of October 16, 2020.

39. When MacCarthy told Plaintiff about his expected discharge as a Research Project Assistant, Plaintiff had been performing satisfactorily and had no other disciplinary issues.

40. The only formal evaluation Plaintiff ever received from McCarthy was a grade on his transcript. McCarthy marked Plaintiff as satisfactory for every semester before he told him about his expected discharge.

41. Stony Brook maintains a policy that provides a process in the event an enrollee in one of its programs is disciplined, including a discharge. The process calls for various counseling sessions to discuss and work to resolve the issue.

42. For an employee at Stony Brook, disciplinary action, including discharge, is only allowed if, after a counseling session, the issue was not corrected. Stony Brook also maintained a process when discipline was issued to enable the enrollee to challenge the discipline, even allowing for a hearing to occur to ensure fairness.

43. After MacCarthy told Plaintiff of his expected discharge in October 2020, MacCarthy and Stony Brook made no formal disciplinary charge against Plaintiff and conducted no counseling sessions or any other process to address the issue and MacCarthy's comments.

44. After MacCarthy told Plaintiff about his expected discharge in October 2020, MacCarthy no longer allowed Plaintiff to attend lab group meetings. McCarthy directed Plaintiff's lab colleagues not to communicate with Plaintiff.

45. MacCarthy scolded Plaintiff's lab colleagues, telling them that Plaintiff had legal trouble and that they would have legal problems if they spoke with him.

46.     Even though MacCarthy told Plaintiff of his expected discharge, MacCarthy still directed Plaintiff to continue to work on a project that MacCarthy said would be used for a future grant application to the NIH.

47.     On or about July 15, 2020, Plaintiff became aware that he needed to apply for employment accommodations based on his disability in addition to already receiving accommodations as a student.  He applied immediately.

48.     On or about July 31, 2020, Plaintiff submitted a formal complaint with Stony Brook, alleging that MacCarthy discriminated against him because of his sex and disability. Stony Brook failed to address his Complaint—they failed to conduct a proper investigation or otherwise properly address it.

49.     On or about October 19, 2020, after MacCarthy squeezed all the work out of Plaintiff that he could, MacCarthy followed through with his threat and discharged Plaintiff effective immediately.  The discharge resulted in Plaintiff being removed from the Ph.D. program.

50.     Plaintiff was not afforded any process regarding his discharge or removal from the Ph.D. program—Stony Brook did not follow its policies in that regard.

51.     On or about October 23, 2020, without Stony Brook conducting a proper investigation whatsoever, Plaintiff received an email from Stony Brook informing him that the discrimination complaint against MacCarthy was closed and determined to be unfounded.

52.     On or About October 26, 2020, Stony Brook closed Plaintiff's July 15, 2020, request for employment accommodations without granting him any accommodations.

53.     On or about January 1, 2021, Plaintiff rejoined Dr. Jennie Williams's laboratory as an employee.

54.     On or about February 1, 2021, Plaintiff again applied for employment accommodations from Stony Brook.

55.     Stony Brook granted Plaintiff's accommodations request on or about March 2, 2021.

56.     On or about May 10, 2021, MacCarthy published a scholarly paper which used Plaintiff's work without crediting Plaintiff.

57.     But for the Defendants' discrimination and retaliation, Plaintiff would have graduated with a Ph.D. in Genetics.

58.     The job prospects in the world of academia are sparse for one who only has a Master's Degree, as most positions, including almost every professorship, requires a Ph.D.

59.     MacCarthy's discriminatory and retaliatory discharge of Plaintiff and removal of him from the Ph.D. program prevented Plaintiff from receiving a Ph.D. and ruined his ability to work in academia.

## AS AND FOR A FIRST CAUSE OF ACTION
## AGAINST STONY BROOK
### (Sex Discrimination in Violation of Title IX)

60.     Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this Complaint as if set forth herein more fully at length.

61.     Pursuant to 20 U.S.C. § 1681, "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal assistance…."

62.     Stony Brook is an educational institution that receives federal funding, and the Ph.D. program in which Plaintiff was enrolled was an educational program operated by Stony Brook.

63. Plaintiff was enrolled in a Ph.D program at Stony Brook under the supervision of MacCarthy.

64. Plaintiff excelled at his studies and his employment at Stony Brook while enrolled in the Ph.D program.

65. Plaintiff received a distinguished grant from NIAID, an institute within NIH, in or about April 2020.

66. On June 25, 2020, MacCarthy made a sexist comment to Plaintiff criticizing him for not conforming to traditional and stereotypical gender roles by taking part in child caretaking tasks within his family when one of his young children was ill, and not delegating all of the childcare duties to his wife.

67. Plaintiff took exception to MacCarthy's comment.

68. On or about July 1, 2020, approximately six days after making the sexist comment, MacCarthy told Plaintiff that he was going to be discharged from his employment at MacCarthy's laboratory, and removed from the Ph.D program.

69. Days after MacCarthy made the sexist comment, he excluded Plaintiff from laboratory meetings, and directed Plaintiff's laboratory colleauges not to speak with him.

70. On October 19, 2020, MacCarthy made good on his threat, and discharged Plaintiff from his employment at the laboratory and removed Plaintiff from the Ph.D program.

71. Stony Brook failed to follow its own policies relating to the discharge of employees and removal of enrollees from Ph.D programs, and allowed MacCarthy to exercise his discrimination against Plaintiff.

72. Plaintiff submitted a complaint to Stony Brook on or about July 31, 2020 about MacCarthy's discriminatory comments and actions, but Stony Brook failed to properly

invesitage the matter and shortly after MacCarthy discharged Plaintiff and removed him from the Ph.D program on October 19, 2020, Stony Brook found Plaintiff's complaint to be unfounded.

73.     MacCarthy discharged Plaintiff and removed him from the Ph.D program because Plaintiff did not conform to the traditional and stereotypical gender role of delegating all child care responsibilities to women, i.e., his wife, and took on a role of actively caring for his children.

74.     MacCarthy's actions violated Title IX, 20 U.S.C. § 1681 by discriminating against Plaintiff based on his sex.

75.     As a result of MacCarthy's discrimination, Plaintiff has been damaged by being prevented from finishing his Ph.D program and obtaining a Ph.D.

76.     As a result of MacCarthy's discrimination, Plaintiff has been damaged monetarily by not being able to pursue a career in academia and by being discharged from his job.

77.     As a result of MacCarthy's discrimination, Plaintiff has suffered and continues to suffer several emotional distress, and is entitled to compensatory damages as well as reasonable costs and attorney's fees.

### AS AND FOR A SECOND CAUSE OF ACTION
### AGAINST STONY BROOK
### (Retaliation in Violation of Title IX)

78.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein more fully at length.

79.     Plaintiff engaged in activities protected under Title IX when he opposed and objected to MacCarthy's sexist comment on or about June 25, 2020.

80.     Plaintiff engaged in activities under Title IX when he submitted a complaint which, inter alia, stated, in sum and substance, that MacCarthy discriminated against him on the

basis of sex and for not conforming to traditional and stereotypical gender roles, and discriminated against him based on his disability.

81.     Almost immediately upon Plaintiff's objection and opposition to MacCarthy's sexist comment, MacCarthy retaliated against Plaintiff by threatening to discharge him and remove him from the Ph.D program, prohibiting him from attending laboratory meetings and directing Plaintiff's laboratory colleagues not to communicate with him.

82.     On October 19, 2020, MacCarthy discharged Plaintiff from his employment in MacCarthy's laboratory and removed him from the Ph.D program.

83.     MacCarthy retaliated against Plaintiff for objecting to his June 25, 2020 sexist comments, and submitting a discrimination complaint, by terminating his employment and removing him from the Ph.D program.

84.     Although Stony Brook was advised of MacCarthy's sexism and retaliation it did nothing to remedy the situation, and accepted, approved and condoned MacCarthy's sexist and retaliatory conduct.

85.     As a result of MacCarthy's retaliation, Plaintiff suffered monetary losses and extereme emotional distress, and is entitled to monetary damages, compensatory damages as well as attorney's fees and costs.

**AS AND FOR A THIRD CAUSE OF ACTION
AGAINST MACCARTHY
VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW
(Retaliation in Violation of New York Executive Law § 296(7) *et seq.*))**

86.     Plaintiff hereby repeats, realleges, and reiterates the above allegations as if fully set forth herein.

87.     New York Executive Law § 296 (7) prohibits any person from retaliating against any employee who opposed discriminatory practices prohibited under the New York Human Rights Law or who filed a discrimination complaint.

88.     Plaintiff engaged in protected activity on or about June 25, 2020 when he opposed and expressed his objection to MacCarthy's sexist and discriminatory comments about not conforming to traditional and/or stereotypical gender roles, i.e., taking an active role in caring for his children and not delegating all child care responsibilities to his wife.

89.     Plaintiff engaged in protected activity when he submitted a complaint of discrimination against MacCarthy about his sexist comments, his comments criticizing Plaintiff for not engaging in traditional and/or stereotypical gender roles, and his discrimination and harassment related to Plaintiff's disability on or about July 31, 2020.

90.     In retaliation of Plaintiff's June 25, 2020 opposition and objection to MacCarthy's discriminatory conduct, MacCarthy told Plaintiff that he was going to be discharged in October 2020, prohibited Plaintiff from attending lab group meetings, and instructed Plaintiff's lab colleagues to stop communicating with him.

91.     In retaliation of Plaintiff's June 25, 2020, opposition and objection to MacCarthy's discriminatory conduct and Plaintiff's submission of a complaint of discrimination about MacCarthy's conduct, MacCarthy discharged Plaintiff and removed him from the Ph.D. program on or about October 19, 2020.

92.     MacCarthy's retaliation was obvious as it began only days after Plaintiff opposed and objected to his discriminatory comments made on June 25, 2020, as MacCarthy raised the specter of Plaintiff's discharge, prohibited him from attending lab meetings and directed lab colleagues not to communicate with him only days after Plaintiff objected and opposed MacCarthy's sexist comments.

93. MacCarthy's retaliation was obvious, as Plaintiff was performing well in the Ph.D program and had recently received a prestigious grant. The only explanation for the adverse actions against Plaintiff was his protected activity.

94. MacCarthy used Plaintiff for his work in months following his sexist comments, but followed through with his threat of discharge on October 19, 2020 by immediately discharging him on that date.

95. As a direct result of MacCarthy's retaliation, Plaintiff lost his job and was removed from the Ph.D program.

96. As a result of MacCarthy's retaliation, Plaintiff suffered and continues to suffer monetary losses, as Plaintiff was not able to finish the Ph.D program and obtain his Ph.D which is necessary to pursue a career in academia.

97. As a result of MacCarthy's retaliation, Plaintiff suffered from and continues to suffer extreme emotional distress and humiliation.

98. As a result of MacCarthy's obvious and egregious retaliation, Plaintiff is entitled to attorney's fees and punitive damages.

## AS AND FOR A FOURTH CAUSE OF ACTION
## AGAINST MACCARTHY
## VIOLATIONS OF NEW YORK STATE HUMAN RIGHTS LAW
### (Sex Discrimination in Violation of New York Executive Law§ 296)

99. Plaintiff hereby repeats, realleges, and reiterates the above allegations as if fully set forth herein.

100. Plaintiff is a male.

101. MacCarthy was Plaintiff's supervisor.

102.    After informing MacCarthy on or around June 25, 2022, that Plaintiff needed to take care of his sick children, MacCarthy replied via email to Plaintiff that since his wife was able to take care of his children, that was not a valid excuse.

103.    MacCarthy's comment was critical of Plaintiff for not conforming to the stereotypical gender roles of a woman taking care of the children and the man only focusing on work.

104.    Only Six days after informing Plaintiff that his wife should care of the kids and not him, MacCarthy told Plaintiff that his job was going to be terminated in October 2020, prohibited him from attending lab meetings and directed Plaintiff's lab colleagues not to communicate with him.

105.    Plaintiff was isolated, excluded, and disrespected because he is a man who helped his wife with their children and for not conforming to the stereotypical genders roles as described above.

106.    MacCarthy used Plaintiff for his labor in the months subsequent to his sexist comments and then discharged Plaintiff on October 19, 2020 and removed him from the Ph.D program.

107.    MacCarthy actively discriminated against Plaintiff by making the offensive June 25, 2020 comment, threatening his discharge, making other discriminatory prohibitions, and making the decision to discharge him and removed him from the Ph.D program.

108.    Because MacCarthy was Plaintiff's supervisor who had the authority to hire and fire, and made the decision to discharge Plaintiff, and because MacCarthy as supervisor was the person who actively discriminated against Plaintiff, MacCarthy was an employer of Plaintiff as defined in the New York Human Rights Law.

109. Because MacCarthy was Plaintiff's supervisor who had the authority to hire and fire, and made the decision to discharge Plaintiff, and because MacCarthy as supervisor was the person who actively discriminated against Plaintiff, Stony Brook is vicariously liable for MacCarthy's discriminatory conduct

110. Stony Brook received a complaint of discrimination from Plaintiff on or about July 31, 2020, concerning, inter alia, MacCarthy's sexist comments, his threat to discharge Plaintiff and MacCarthy's discriminatory and retaliatory treatment after the June 25, 2020 comment.

111. Stony Brook failed to properly investigate and/or address Plaintiff's Complaint of discrimination, and ultimately, in late October 2020 determined that the claim was unfounded.

112. By Stony Brook's failure to properly investigate and address MacCarthy's discrimination and Plaintiff's Complaint about it, Stony Brook accepted, approved and condoned MacCarthy's discrimination and retaliation.

113. For that reason, Stony Brook would be liable for McCarthy's discrimination against Plaintiff.

114. Based on the above, MacCarthy violated New York Executive Law § 296 by discriminating against and treated Plaintiff less well because of his sex and his not conforming to stereotypical gender roles.

115. As a result of the discrimination, Plaintiff experienced extreme emotional distress and mental anguish.

116. As a result of the sex discrimination, Plaintiff suffered monetary and compensatory damages, including lost compensation and benefits, and the loss of a career in academia.

117.    Plaintiff is also entitled to attorney's fees and costs and, due to the egregious nature of the discrimination, is entitled to punitive damages.

## AS AND FOR A FIFTH CAUSE OF ACTION
### AGAINST MACCARTHY
### VIOLATIONS OF NEW YORK STATE HUMAN RIGHTS LAW
### (Familial Status Discrimination in Violation of New York Executive Law§ 296)

118.    Plaintiff hereby repeats, realleges, and reiterates the above allegations as if fully set forth herein.

119.    In 2020, Plaintiff was married and had two young children.

120.    MacCarthy was Plaintiff's supervisor.

121.    After informing MacCarthy on or around June 25, 2022, that Plaintiff needed to take care of his sick children, MacCarthy replied via email to Plaintiff that since his wife was able to take care of his children, that was not a valid excuse.

122.    MacCarthy's comment was critical of Plaintiff for caring for his children and was upset that Plaintiff had to attend to familial matters involving his children.

123.    Once Plaintiff's familial status of having a wife and two children—and being an active parent of his two children—was brought to MacCarthy's attention, MacCarthy discriminated against Plaintiff because of his familial status.

124.    Only six days after expressing his upset at Plaintiff for having to care for his two young children, one who was ill, MacCarthy told Plaintiff that his job was going to be terminated in October 2020, prohibited him from attending lab meetings and directed Plaintiff's lab colleagues not to communicate with him.

125.    Plaintiff was isolated, excluded, and disrespected because he was married with two young children.

126. MacCarthy used Plaintiff for his labor in the months subsequent to his offensive comments about how to care for his children and then discharged Plaintiff on October 19, 2020 and removed him from the Ph.D program.

127. MacCarthy actively discriminated against Plaintiff by making the offensive June 25, 2020 comment, threatening his discharge, making other discriminatory prohibitions, and making the decision to discharge him and removed him from the Ph.D program.

128. Because MacCarthy was Plaintiff's supervisor who had the authority to hire and fire, and made the decision to discharge Plaintiff, and because MacCarthy as supervisor was the person who actively discriminated against Plaintiff, MacCarthy was an employer of Plaintiff as defined in the New York Human Rights Law.

129. Because MacCarthy was Plaintiff's supervisor who had the authority to hire and fire, and made the decision to discharge Plaintiff, and because MacCarthy as supervisor was the person who actively discriminated against Plaintiff, Stony Brook is vicariously liable for MacCarthy's discriminatory conduct.

130. Stony Brook received a complaint of discrimination from Plaintiff on or about July 31, 2020, concerning, *inter alia*, MacCarthy's comments critical of Plaintiff caring for his children, his threat to discharge Plaintiff and MacCarthy's discriminatory and retaliatory treatment after the June 25, 2020 comment.

131. Stony Brook failed to properly investigate and/or address Plaintiff's Complaint of discrimination, and ultimately, in late October 2020 determined that the claim was unfounded.

132. By Stony Brook's failure to properly investigate and address MacCarthy's discrimination and Plaintiff's Complaint about it, Stony Brook accepted, approved and condoned MacCarthy's discrimination and retaliation.

133.    For that reason, Stony Brook would be liable for McCarthy's discrimination against Plaintiff.

134.    Based on the above, MacCarthy violated New York Executive Law § 296 by discriminating against and treated Plaintiff less well because of his familial status of being a hustand and father of two young children.

135.    As a result of the discrimination, Plaintiff experienced extreme emotional distress and mental anguish.

136.    As a result of the sex discrimination, Plaintiff suffered monetary and compensatory damages, including lost compensation and benefits, and the loss of a career in academia.

Plaintiff is also entitled to attorney's fees and costs and, due to the egregious nature of the discrimination, is entitled to punitive damages

### AS AND FOR A FOURTH CAUSE OF ACTION
### AS AGAINST DEFENDANT MACCARTHY
### VIOLATIONS OF THE NEW YORK STATE HUMAN RIGHTS LAW
### (<u>Aiding and Abetting Discrimination in Violation of New York Executive Law § 296 *et seq*.</u>)

137.    Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

138.    New York Executive Law § 296(6) provides that: "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

139.    As detailed above, Stony Brook is liable to Plaintiff for MacCarthy's discrimination because it failed to properly investigate and address Plaintiff's complaints about it and accepted, approved and condoned MacCarthy's discrimination, including MacCarthy's decision to discharge Plaintiff on October 19, 2020.

140.     As detailed above, Stony Brook is liable to Plaintiff for MacCarthy's discriminatory conduct because MacCarthy is a supervisor of Plaintiff with the authority to hire and fire, and MacCarthy was the individual, acting on Stony Brook's behalf, who actively engaged in the discrimination of Plaintiff.

141.     MacCarthy actively participated and was the main perpetrator of the acts of discrimination complained of in this Complaint.

142.     MacCarthy aided and abetted Stony Brook's discrimination.

143.     McCarthy knowingly and/or recklessly aided, abetted, incited, compelled, and coerced the unlawful employment practices and discrimination against Plaintiff in violation of Executive Law § 296(6).

144.     Plaintiff suffered and continues to suffer monetary losses, including but not limited to loss of past and future income, compensation, and benefits, for which she is entitled to an award of monetary damages and other relief.

145.     Plaintiff also suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages.

146.     As a direct and proximate result of Defendants' unlawful and discriminatory actions in violation of Executive Law § 296(6), Plaintiff is entitled to punitive damages, plus attorneys' fees and costs.

# PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court grant judgment in her favor

and against Defendants:

A.     Declaring that Defendants engaged in unlawful employment practices prohibited by the state and local laws;

B.     Awarding Plaintiff damages in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiff for all monetary and/or economic damages, including but not limited to compensation for her severe mental anguish and emotional distress, humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, emotional pain and suffering and other physical and mental injuries;

C.     Awarding Plaintiff damages in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including but not limited to compensation for her severe mental anguish, and emotional distress, humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, emotional pain and suffering and other physical and mental injuries;

D.     Awarding Plaintiff damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus pre-judgment interest;

E.     Awarding Plaintiff punitive damages, in an amount to be determined at trial;

F.     Awarding Plaintiff costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

G.      Awarding Plaintiff such other and further relief as the Court deems just and proper.

Dated: Garden City, New York
       October 10, 2023

                                    Stagg Wabnik Law Group LLP

                                    By: _____
                                        David Ehrlich - (de-9786)
                                            Scott Clark - (sc-9218)
                                    *Attorneys for Plaintiff*
                                    401 Franklin Avenue, Suite 300
                                    Garden City, New York 11530
                                    (516) 812-4570
                                    *dehrlich@staggwabnik.com*

TO:    Thomas McCarthy
       5 Locust Manor Court
       East Setauket, New York 11733


       Stony Brook University
       100 Nicolls Road
       Stony Brook, New York 11794